

The following constitutes
the order of the court. Signed February 2, 2016

Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>JAMES PAUL GARRETT,<br><br>    Debtor. | Case No. 14-41630 CN<br><br>Chapter 7 |
| NOBANTU ANKOANDA,<br><br>    Plaintiff,<br>vs.<br><br>JAMES PAUL GARRETT,<br><br>    Defendant. | Adversary No. 14-4090<br><br>**DECISION AFTER TRIAL** |

On January 20, 2016, this court conducted a trial in the above adversary proceeding. All appearances were made on the record. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

Plaintiff Nobantu Ankoanda seeks to have her $200,000 Alameda County Superior Court award against defendant James Garrett declared a non-dischargeable obligation under Bankruptcy Code § 523(a)(2)(A). Ankoanda, who was represented by counsel, contends that 1) the doctrine of issue preclusion requires that this court enter a non-dischargeable judgment against Garrett, and 2) the evidence presented at trial independently demonstrate that such a judgment is warranted. The court disagrees on both counts, and enters judgment in Garrett's favor.

Ankoanda was this trial's only witness, and her testimony was difficult to follow. The facts

1

indicate, however, that in 2004, Garrett, an attorney licensed to practice in California, was representing an Ankoanda family member in a trust matter, and also advising Ankoanda regarding funds that she had received (possibly on her son's behalf) from a trust. Ankoanda testified that Garrett needed $100,000 for a down payment on a house located at 814 59th Street in Oakland, California (the "Oakland Property"), and that he agreed to accept this $100,000 as compensation for his legal work. Ankoanda obtained this $100,000 by refinancing East Palo Alto, California real property that she owned. Ankoanda stated that she borrowed $150,000 against the East Palo Alto property, using $100,000 as the down payment, retaining $25,000 for herself and paying Garrett (for unexplained reasons) the remaining $25,000. Ankoanda also stated that she agreed to take title to the Oakland Property. Despite initially describing the $100,000 as compensation for Garrett's legal work, Ankoanda also described the $100,000 as a loan. The parties did not document this transaction, and Ankoanda did not describe the loan terms (interest rate, payment terms, etc.), other than to state that it was a "temporary loan."

Ankoanda expected Garrett to repay the $100,000 loan by refinancing the Oakland Property. The Oakland Property was refinanced in 2004, but she received little of the refinance proceeds. Ankoanda explained that she was asked to transfer title to the Oakland Property to Garrett's "business associates," who would refinance the Oakland Property to repay Garrett's loan. Ankoanda never identified these business associates at trial, and did not describe Garrett's relationship with these people in any detail. Ankoanda initially testified that Garrett's "business associates" explained to her the details necessary to refinance the Oakland Property and disburse the proceeds. She later testified that Garrett assured her that she would receive funds from the refinance and that she should talk to his "business associates." Ankoanda testified that she did transfer title to these unnamed business associates, who pulled $115,000 from the Oakland Property. She stated that she received $10,000 from the refinance, and that Garrett received the rest. Garrett apparently resides at the Oakland Property. Ankoanda did not introduce into evidence any documentation relating to transfer of title or the refinance of the Oakland Property.

In September 2007 Ankoanda commenced litigation against Garrett and several other parties (who this court presumes were his "business associates") in Alameda County Superior Court,

2

DECISION AFTER TRIAL

alleging fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, breach of fiduciary duty and declaratory relief causes of action. She also sought to impose a constructive trust against the Oakland Property. Garrett denied the material allegations of the complaint, and the parties proceeded to trial.

Ankoanda and Garrett settled the Alameda County litigation on the day of trial (January 24, 2011). Their agreement, which was placed on the record under California Code of Civil Procedure 664.6 (and admitted into evidence herein in the form of a court transcript), required Garrett to make a $200,000 lump sum payment to Ankoanda by January 24, 2012. Garrett (who was represented by counsel) agreed to sign a $200,000 promissory note and secure it with the Oakland Property. The note carried no interest, and the parties released each other of all other claims and agreed to pay their own fees and costs.

Garrett did not pay the $200,000, and he filed the underlying Chapter 7 on March 16, 2014 after Ankoanda filed a second complaint against him in Alameda County Superior Court to enforce the § 664.6 judgment.

The elements of a nondischargeable claim under Bankruptcy Code § 523(a)(2)(A) are well known. Bankruptcy Code § 523(a)(2)(A) provides that "A discharge . . . does not discharge an individual debtor from any debt . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - (A) false pretenses, a false representation, or actual fraud[.]" A creditor must establish five elements to prevail on a § 523(a)(2)(A) claim: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir. 2000). A §523(a)(2)(A) claim may also arise from the concealment or intentional non-disclosure of material facts. *In re Evans*, 181 B.R. 508, 515 n.6 (Bankr.S.D. Cal.1995). A debtor's knowledge and intent to deceive may be inferred by circumstantial evidence and from the debtor's conduct. *Edelson v. CIR*, 829 F.2d 828, 832 (9th Cir. 1987); *Donaldson v. Hayes (In re Ortenzo Hayes)*, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004). A

3

DECISION AFTER TRIAL

Case: 14-04090    Doc# 63    Filed: 02/02/16    Entered: 02/02/16 13:01:22    Page 3 of 6

§ 523(a)(2)(A) claim requires that the "target misrepresentation must have existed at the inception of the debt, and a creditor must prove that he or she relied on that misrepresentation." *Reingold v. Shaffer (In re Reingold)*, 2013 WL 1136546, at *5 (9th Cir. B.A.P. Mar 19, 2013); *see also, New Falls Corp. v. Boyajian (In re Boyajian),* 367 B.R. 138, 147 (9th Cir. B.A.P. 2007) (*citing Bombardier Capital, Inc. v. Dobek (In re Dobek)*, 278 B.R. 496, 508 (Bankr. N.D. Ill.2002)). Finally, Ankoanda must prove her § 523(a)(2)(A) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

Ankoanda has not met her burden of proof. Ankoanda's testimony did not demonstrate by a preponderance of the evidence exactly what representations Garrett made to her regarding repayment of the loan (in contrast to her testimony regarding the representations made by the "business associates"), or the exact nature of Garrett's relationship with his alleged "business associates." Her testimony on this critical issue was inconsistent at best, and this court therefore cannot find that Garrett made any misrepresentations to Ankoanda regarding repayment of the loan. Without clearer evidence, the court cannot determine who made the false representations to Ankoanda regarding the application of the refinance proceeds, or whether this court can hold Garrett liable for the statements of his alleged "business associates." *See, e.g. Sachan v. Huh (In re Huh)*, 506 B.R. 257 (9th Cir. B.A.P. 2014).

Ankoanda's issue preclusion argument also fails.[1] In determining the effect of a state court judgment, this court, as a matter of full faith and credit, applies California's law of issue preclusion.

---

[1] Ankoanda's trial memorandum argues that she was entitled to a non-dischargeable judgment under the doctrine of judicial estoppel. "Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process." *Jackson v. County of Los Angeles*, 60 Cal.App.4th 171, 181 (1997). The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e. the tribunal adapted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud or mistake." [citations omitted.] *Minish v. Hanuman Fellowship*, 214 Cal.App. 4th 437, 449 (2013). This doctrine has no bearing in this adversary proceeding, since Garrett denied liability in Alameda County Superior Court and continues to do so herein. At trial, this court perceived Ankoanda to instead argue the doctrine of issue preclusion.

4

**DECISION AFTER TRIAL**

*In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir. 1995); *In re Jung Sup Lee*, 335 B.R. 130, 136 (9th Cir. B.A.P. 2005). Under California law, a prior judgment is entitled to issue preclusive effect if six elements are met: 1) the issue sought to be precluded must be identical to that decided in the former proceeding; 2) the issue must have been actually litigated in the former proceeding; 3) the issue must have been necessarily decided in the former proceeding; 4) the decision in the former proceeding must be final and on the merits; 5) the party against whom issue preclusion is sought must be the same as, or in privity with, the party to the former proceeding; and 6) the application of issue preclusion must further the public policies underlying the doctrine. *See In re Harmon*, 250 F.3d 1240, 1245 (9th Cir. 2001).

Ankoanda bears the burden to establish these elements, and she must provide "a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *In re Kelly*, 182 B.R. 255, 258 (9th Cir. B.A.P. 1995), *aff'd*, 100 F.3d 110 (9th Cir. 1996). Any reasonable doubt as to what was decided in Alameda County Superior Court should be resolved against the application of issue preclusion. *Id*.

Putting aside the fact that a judgment under California Code of Civil Procedure 664.6 may not have an issue preclusive effect[2], the Alameda County Superior Court did not make any findings of fact, and the parties did not stipulate to any such findings. Accordingly, it is impossible to determine what, if anything, was actually and necessarily litigated. Moreover, Ankoanda's Alameda County Superior Court complaint contained both intentional and negligent tort causes of action, so it is impossible to determine which cause of action is reflected in the $200,000 settlement.

For all of the above reasons, Ankoanda has not met her burden of proof, and judgment shall be entered in Garrett's favor. The court will prepare the judgment.

**\* \* \* END OF ORDER \* \* \***

---

[2] *See, e.g.*, *Yaikian v. Yaikian (In re Yakian)*, 508 B.R. 175 (Bankr. S.D.Cal. 2014), which addressed the collateral estoppel effect of a stipulated judgment under California Code of Civil Procedure 998.

5

DECISION AFTER TRIAL

# COURT SERVICE LIST

James Paul Garrett
814 59th St.
Oakland, CA 94608

Other Recipient is an ECF participant